UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM A. REED, JR. as personal representative for ELSIE M. REED, an incompetent individual, and WILLIAM A. REED, JR., individually,<br><br>        Plaintiff,<br><br>    v.<br><br>KAREN SCHEFFLER Mayor of the Borough of Palmyra, TRACY KILMER Housing Official, Borough of Palmyra, BOROUGH OF PALMYRA,<br><br>        Defendants. | 1:16-cv-00423-NLH-AMD<br><br>OPINION |

**APPEARANCES**:

PETER M. KOBER
1876 GREENTREE ROAD
CHERRY HILL, NJ 08003
    On behalf of plaintiff

RICHARD L. GOLDSTEIN
ASHLEY L. TOTH
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002
    On behalf of defendant Karen Scheffler

**HILLMAN, District Judge**

    This case involving allegations of, *inter alia*, due process and free speech violations arises out of the application of the Borough of Palmyra's ordinance requiring a certificate of

occupancy prior to the sale of a home.  Presently before the Court is the motion of defendant Karen Scheffler, the Mayor of Palmyra, to dismiss plaintiff's free speech and defamation claims.  For the reasons expressed below, defendant's motion will be granted.

## BACKGROUND

According to his complaint, plaintiff, William A. Reed, Jr., held powers of attorney over the affairs of his mother, Elsie M. Reed, who owned a home at 28 Pear Street in Palmyra, New Jersey.  Ms. Reed lived in the home until July 2012.  In early 2013, plaintiff wished to sell the house in "as is" condition.  The tax assessed value of the property as of January 7, 2013 was $134,900.  In February 2014, plaintiff found a buyer who was in the home remodeling business, and after several inspections of the property, offered plaintiff $95,000.  By the end of February 2014, the buyer had secured a mortgage and the parties were ready to close on the property no later than April 1, 2014 because time was of the essence for the buyer.

On February 27, 2014, plaintiff sent an email to defendant Tracy Kilmer, who is the Borough's housing official, to inquire about the Borough's ordinance requiring a home owner to obtain a certificate of occupancy ("COO") from the Borough prior to the sale of a home.  Kilmer replied to plaintiff's email and informed him that such an ordinance, Ordinance 2013-25, was in effect and plaintiff was required to obtain a COO.  Kilmer performed an

2

inspection of the property on March 10, 2014 and found 33 code violations. Plaintiff was afforded until April 30, 2014 to correct the code violations.

Plaintiff claims that even though the buyer still wished to purchase the property after the March 10, 2014 inspection report, the parties could not go through with the sale by the April 1, 2014 deadline without a COO. Ultimately, the sale fell through. By September 2014, plaintiff, after "great hardship and expense," fixed the code violations. On September 16, 2014, Kilmer re-inspected the property and issued a COO to plaintiff. On December 15, 2014, the property sold to a different buyer for $115,000.

On February 2, 2015, plaintiff attended the Borough's council meeting, where he spoke about Ordinance 2013-25. Plaintiff shared the hardship and expense he experienced because of the COO requirement. The Mayor of Palmyra, defendant Karen Scheffler, was in attendance at the meeting.

On February 3, 2015, plaintiff was interviewed by Todd McHale, a reporter for the Burlington County Times newspaper. Plaintiff was quoted as saying, "a lot of older people in this town are going to be shocked when they go to sell their homes," and that "there's going to be a lot of people who are going to be shocked . . . of what they face when selling a home in the Borough. I was shocked." McHale reported that plaintiff believed

that the Borough housing inspections "go too far." This article was published in the Times' on-line edition that day.

On February 4, 2015, the Time's on-line edition published an article concerning McHale's interview of Scheffler in her official capacity as the Borough's mayor in response to plaintiff's comments. Scheffler is reported as saying:

- "the house was in extreme disrepair - dangerous even - and had been vacant for some time"
- "properties of this sort negatively affect the entire neighborhood and bring down property values"
- "this property was a real eyesore for the neighborhood and a liability for Mr. Reed"
- "there were many deficient areas, including electrical and plumbing problems, numerous holes, leaks, lack of CO detectors, a lack of hot water, crumbled chimney cement, no working stove and exposed wiring."

(Compl. ¶¶ 62-66.)

Plaintiff advances seven counts against Kilmer, Scheffler, and the Borough. Plaintiff claims that Kilmer and the Borough violated his due process rights under the "takings clause" when they required him to comply with Ordinance 2013-25 in February 2014, even though the effective date of that Ordinance was on hold until April 1, 2014. Plaintiff also claims that Scheffler, in her individual and official capacities, violated his right to free

4

speech under the U.S. and New Jersey constitutions.  Plaintiff further claims that Scheffler and the Borough are liable for defamation.

Scheffler has moved to dismiss the claims plaintiff has asserted against her.  Plaintiff has opposed Scheffler's motion.

## DISCUSSION

### A. Subject matter jurisdiction

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as the New Jersey constitution and New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the

5

claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

6

conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

　　　A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S.

7

Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd._,_ 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

    C.    **Analysis**

        1.    *Plaintiff's free speech violation claims (Counts V and VI)*

It is well-established that a concerned citizen who speaks his mind to a town's officials or the newspaper is protected by the First Amendment.[1]  Pomykacz v. Borough of West Wildwood, 438 F. Supp. 2d 504, 512-13 (D.N.J. 2006) (citing Mills v. Alabama, 384 U.S. 214, 218 (1966) ("[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."); Roth v. United States, 354 U.S. 476, 484 (1957) ("The protection

---

[1] The parties agree that the analysis of plaintiff's free speech claims is the same under the U.S. constitution and the New Jersey constitution.  See Wiley Mission v. New Jersey, 2011 WL 3841437, at *18 (D.N.J. 2011) (citing State v. Cameron, 498 A.2d 1217, 1127-28 (N.J. 1985) (explaining that the New Jersey Supreme Court has consistently equated the meaning of Article I, Paragraph 3 with the Supreme Court's interpretation of the First Amendment)).

given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.")). The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights. Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977)); see also Eichenlaub v. Township of Indiana, 385 F.3d 274, 284 (3d Cir. 2004) (finding that a landowner's speech at a township board of supervisors meeting relating to zoning dispute, for which township allegedly retaliated against him and his family, was entitled to First Amendment protection).

In the same vein, public officials are also afforded the protections of the First Amendment. "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). The First Amendment protects some expressions related to the speaker's job. Id. at 421. "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. at 419 (explaining that when public employees make statements pursuant to their official

9

duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline).  Moreover, public officials who perform discretionary duties within the scope of their employment are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Hogan v. Township of Haddon, 278 Fed. Appx. 98, 104 (3d Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity is not a defense to liability; it is an absolute immunity from suit.  Id. (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)).

Under this backdrop, "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quotations and citations omitted).  Thus, in order to prevail on a First Amendment retaliation claim, a plaintiff must show:  (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Id. at 530.  "[T]he key question in determining whether a

10

cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).

Accepting all of the allegations in plaintiff's complaint as true, plaintiff's First Amendment claims against Scheffler fail. Plaintiff availed himself of his First Amendment rights and expressed his concerns over the Borough's COO ordinance at the Borough council meeting and to the local newspaper. Scheffler availed herself of her First Amendment rights to respond to the same newspaper about plaintiff's statements he made at the council meeting and to the newspaper.

Plaintiff does not allege that Scheffler's statements caused him to be fearful of exercising his rights to speak to the council or the newspaper thereafter. Plaintiff's complaint is also lacking any allegations that plaintiff was prevented from obtaining a COO or selling his mother's home as a result of his statements to the council or the newspaper. There are simply no allegations that plaintiff's free speech rights were chilled, or that he suffered any sort of retaliation.[2] Thus, plaintiff's free

---

[2] Any First Amendment claim based on the assertion that the retaliation took the form of defamatory statements must fail in light of our determination below that plaintiff has failed to make

11

speech violation claims must be dismissed.

### 2. *Plaintiff's defamation claim (Count VII)*

Plaintiff alleges that Scheffler's statements to the newspaper amount to defamation. The standard for pleading and proving a defamation claim is different from a free speech violation claim. To establish defamation under New Jersey law, a plaintiff must show that the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault. Mangan v. Corporate Synergies Group, Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing Singer v. Beach Trading Co., 379 N.J. Super. 63, 79, 876 A.2d 885 (App. Div. 2005)).

Whether a statement is defamatory depends on "'its content, verifiability, and context.'" Id. (citing Lynch v. N.J. Educ. Assoc., 161 N.J. 152, 167, 735 A.2d 1129 (1999)). To qualify as a defamatory statement, the statement must be able to be proven true or false. Id. Statements of pure opinion do not satisfy this requirement because such statements only "reflect a state of mind," and therefore generally "cannot be proved true or false." Id. Statements of opinion do not receive "a wholesale defamation exemption," however, if the statements "imply false underlying objective facts." Id. (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990) (other citations omitted).

---

out a defamation claim.

Generally, a defamatory statement is one that subjects an individual to contempt or ridicule, and harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him. G.D. v. Kenny, 15 A.3d 300, 310 (N.J. 2011) (citations omitted). Whether words can reasonably be construed as defamatory is a question of law for the Court in the first instance. Cibenko v. Worth Publishers, Inc., 510 F. Supp. 761, 764 (D.N.J. 1981); Ward v. Zelikovsky, 643 A.2d 972, 978 (N.J. 1994).

Plaintiff's complaint alleges that Scheffler told the newspaper the following:

- "the house was in extreme disrepair - dangerous even - and had been vacant for some time"
- "properties of this sort negatively affect the entire neighborhood and bring down property values"
- "this property was a real eyesore for the neighborhood and a liability for Mr. Reed"
- "there were many deficient areas, including electrical and plumbing problems, numerous holes, leaks, lack of CO detectors, a lack of hot water, crumbled chimney cement, no working stove and exposed wiring."

(Compl. ¶¶ 62-66.)

Even though plaintiff generally alleges that all of Scheffler's statements were false, plaintiff does not specifically

13

allege in his complaint that the fact portions of Scheffler's statements were not true. Scheffler's statements that the house "had been vacant for some time" and "there were many deficient areas, including electrical and plumbing problems, numerous holes, leaks, lack of CO detectors, a lack of hot water, crumbled chimney cement, no working stove and exposed wiring" are fact statements that plaintiff does not specifically allege to be false.[3] Thus, a defamation claim based on these statements is not actionable.

The remaining statements can be classified as the opinions of Scheffler. Plaintiff argues that the innuendo Scheffler created by her opinions falls into the type of opinion statements that are actionable because they imply false underlying facts. Specifically, plaintiff argues that a reader of Scheffler's statements, taken collectively, form the impression that plaintiff, who was responsible for the upkeep of 28 Pear Street, was the type of person who would allow his property to fall into disrepair to the extent that it became an eyesore and devalue other homes in the neighborhood. Plaintiff claims that this false impression harmed his reputation and estimation of him in the

---

[3] Plaintiff argues that the inspection reports, photographs of the property, and testimony of inspectors can be produced to fact-check Scheffler's statements. The problem with plaintiff's position is that it is his obligation under Rule 8 and Twombly/Iqbal to plead facts which suggest that Scheffler's statements were false. Without such allegations in the complaint, the Court cannot accept that Scheffler's statements were false for the purposes of resolving Scheffler's Rule 12(b)(6) motion.

community.

Accepting as true that Scheffler's statements imply that plaintiff was derelict in taking care of his mother's home, these statements do not rise to the level of contempt or ridicule, or of such a nature to harm plaintiff's reputation in the community.

As a primary matter, plaintiff has not pleaded facts to suggest that his reputation has been harmed. Plaintiff simply contends that he was insulted and feels that his reputation was harmed. This pleading failure to fatal to his defamation claim.

To further drive home the point that Scheffler's statements do not support a viable claim for defamation, a look at two cases is illustrative. In McCausland v. City Of Atlantic City, 2006 WL 1451060, at *1 (N.J. Super. App. Div. 2006), the Appellate Division affirmed the trial judge's determination that Atlantic City's mayor did not defame the plaintiff, the president of the Police Benevolent Association, in statements made by the mayor to the Atlantic City Press. The mayor stated to the newspaper that the plaintiff was "someone who has mastered the art of suburban warfare, has no connection to Atlantic City, and has contributed nothing to the city, but takes all he can out of the city." McCausland, 2006 WL 1451060 at *1. The Mayor was also quoted as "definitely questioning McCausland's leadership as the president of the PBA." Id. In another Atlantic City Press article, the mayor stated that the plaintiff was "persona non grata," had "lost

15

the confidence of the rank-and-file PBA membership and was on his way out." Id.

In addition to these statements to the press, the plaintiff claimed that the mayor instigated an Internal Affairs investigation of him by claiming he was rude, loud and offensive at a City Council meeting; in a memorandum the mayor claimed that plaintiff had lied to the Chief of Police regarding a rumored sick-out during President's Day weekend and sought disciplinary action against plaintiff; and the mayor also allegedly told another police officer that plaintiff was "a piece of sh-t." Id.

The plaintiff claimed that the mayor's statements tarnished his reputation throughout the community. In affirming the trial court, the appellate court reiterated that it was the court's responsibility to distinguish non-actionable obscenities, vulgarities, insults, epithets, name-calling, verbal abuse, and statements of rhetorical hyperbole from true defamatory language. Id. (citation omitted). The appellate court "agree[d] completely" with the trial judge and found that the alleged comments did constitute actionable defamation. Id. The court noted, "No matter how obnoxious, insulting or tasteless these comments may be, they are a part of life for which the law of defamation affords no remedy." Id. (citations omitted). The court concluded that the alleged statements by the mayor did not rise to the level of injuring the plaintiff's reputation, or to

deter others from having any contact with him, or stated, implied, or suggested specific facts that can be proven false. Id.

Similarly, in Ferraro v. City of Long Branch, 714 A.2d 945, 949 (N.J. Super. Ct. App. Div. 1998), a former municipal worker sued the mayor of the City of Long Branch for defamation. The plaintiff suffered a massive heart attack while shoveling snow from City Hall steps, and stated to a reporter for a newspaper article that the mayor repeatedly ordered him to perform manual labor that was not part of his job in order to humiliate him. The reporter interviewed the mayor for a response to the plaintiff's claims, and the mayor stated that the plaintiff's claims were without merit. Ferraro, 714 A.2d at 950. The mayor further stated, "'Nobody ever did anything to harm Mr. Ferraro, and I'm sure that's exactly what will come out as this matter progresses. . . . It's unfortunate that he's chosen this method of attack. If the notion is to embarrass us, I think it's unfortunate.'" Id. The mayor also released to the newspaper plaintiff's medical report, which changed plaintiff's cause of injury on the steps from a cardiac ailment to a psychotic depression. Id.

The appellate court found that the plaintiff's cause of action against the mayor for defamation based upon his statements regarding the frivolous nature of plaintiff's suit and the release of the medical report was properly dismissed. Id. at 956. The court determined that the mayor "was merely offering his opinion

17

or adopting as his own the opinion of another, and he did so in response to a public official's public allegations as reported in the press."  Id. (citations omitted).

These two cases about alleged defamatory statements by a town's mayor to a newspaper demonstrate that plaintiff's defamation claim in this case against his town's mayor is similarly unavailing.  Moreover, the law recognizes a difference between statements made by officers in formal discharge of their governmental duties and those made in other contexts, including during activities connected to the office but not directly and strictly in the exercise of committed functions.  Conte v. Mayor and Council, City of Garfield, 2003 WL 22019955, at *3 (N.J. Super. Ct. App. Div. 2003) (citing Burke v. Deiner, 97 N.J. 465 (1984)) (other citations omitted).  Public statements of elected officials are entitled to absolute immunity from suit for defamation when the statements are made while they are "engaged in the discharge of duties imposed on them by law," and "statements made in other contexts enjoy only qualified immunity."  Id. (citations omitted).  Additionally, under the New Jersey Tort Claims Act, "A public employee is not liable if he acts in good faith in the execution or enforcement of any law," N.J.S.A. 59:3-3, and a public employee's good faith negates the "actual malice" standard for an actionable defamation claim.  Jobes v. Evangelista, 849 A.2d 186, 192 (N.J. Super. Ct. App. Div. 2004).

18

In short, a person has the right "to enjoy one's reputation free from unjustified smears and aspersions," but that right must be weighed against "[t]he significant societal benefit in robust and unrestrained debate on matters of public interest. The law of defamation attempts to strike the proper balance between protecting reputation and protecting free speech." G.D. v. Kenny, 15 A.3d at 310 (citations omitted). Here, the statements Scheffler made to the Burlington County Times, although arguably harsh, related to a municipal ordinance, the reasons for its enforcement and existence, and the effect non-compliance could have on property values in the town. All of these issues related directly to her duties and responsibilities as mayor. The statements do not constitute defamation.

## CONCLUSION

For the reasons expressed above, defendant Scheffler's motion to dismiss plaintiff's claims against her must be granted. An appropriate Order will be entered.

Date: October 28, 2016             s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.