WILLIAM A. REED, JR.
as personal representative
for ELSIE M. REED, an
incompetent individual, and
WILLIAM A. REED, JR.,
individually,

        Plaintiff,

    v.

KAREN SCHEFFLER,
Mayor of the Borough of
Palmyra, TRACY KILMER
Housing Official, Borough of
Palmyra, BOROUGH OF PALMYRA,

        Defendants.

1:16-cv-00423-NLH-AMD

**OPINION**

**APPEARANCES**:

PETER M. KOBER
1864 ROUTE 70 EAST
CHERRY HILL, NJ 08003
    On behalf of Plaintiff

RICHARD L. GOLDSTEIN
ASHLEY L. TOTH
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002

BETSY G. RAMOS
VORIS M. TEJADA, JR.
CAPEHART & SCATCHARD
LAUREL CORPORATE CENTER
8000 MIDLANTIC DRIVE - C.S. 5016
SUITE 300
MOUNT LAUREL, NJ 08054
    On behalf of Defendants

**HILLMAN,** District Judge

This matter concerns constitutional claims arising out of the enforcement of a municipal ordinance governing the inspection of, and issuance of certificates of occupancy ("CO") for, residential properties. Pending before the Court is the motion of Defendants for summary judgment on all of Plaintiff's claims, as well as Plaintiff's motion for leave to file an amended complaint. For the reasons expressed below, Defendants' motion will be granted, and Plaintiff's motion will be denied.

**BACKGROUND**

Plaintiff, William A. Reed, Jr., held powers of attorney over the affairs of his mother, Elsie M. Reed, who owned a home at 28 Pear Street in Palmyra, New Jersey. Ms. Reed lived in the home until July 2012. In early 2013, Plaintiff wished to sell the house in "as is" condition. The tax assessed value of the property as of January 7, 2013 was $134,900.

In February 2014, Plaintiff found a buyer who was in the home remodeling business, and after several inspections of the property, offered plaintiff $95,000. By the end of February 2014, the buyer had secured a mortgage and the parties were ready to close on the property no later than April 1, 2014 because time was of the essence for the buyer.

On February 27, 2014, Plaintiff sent an email to defendant Tracy Kilmer, who is the Borough's housing official, to inquire about the Borough's ordinance requiring a home owner to obtain a CO from the Borough prior to the sale of a home. Kilmer replied to Plaintiff's email and informed him that such an ordinance was in effect and Plaintiff was required to obtain a CO. Kilmer performed an inspection of the property on March 10, 2014 and found 33 code violations. Plaintiff was initially afforded until April 30, 2014 to correct the code violations, but at Plaintiff's request for an extension Kilmer provided Plaintiff with as much time as he needed to make the repairs.

Plaintiff claims that even though the buyer still wished to purchase the property after the March 10, 2014 inspection report, the parties could not go through with the sale by the April 1, 2014 closing date without a CO. Ultimately, the sale fell through. By September 2014, Plaintiff, after "great hardship and expense," fixed the code violations. On September 16, 2014, Kilmer re-inspected the property and issued a CO to Plaintiff. On December 15, 2014, the property sold to a different buyer for $115,000.

Although as discussed below he makes other arguments, Plaintiff's primary assertion is that Kilmer and the Borough violated his substantive due process rights when they required

him to comply with the CO Ordinance in February 2014, even though he claims that the effective date of that Ordinance was on hold until April 1, 2014, as set forth on the Borough's webpage.[1]

Defendants have moved for summary judgment in their favor. They argue that: (1) Plaintiff lacks standing to assert his substantive due process claim because he was not the owner of the property when the alleged unconstitutional conduct occurred; (2) the Ordinance requiring a CO prior to sale was in effect as of February 1, 2014 and therefore in effect at the time Plaintiff contacted Kilmer and she performed the inspection; (3) because the Ordinance was in effect and is otherwise lawful, their conduct cannot be held to "shock the conscience"; and (4) Plaintiff ultimately sold the house for $20,000 more than the original buyer had offered Plaintiff.[2]

---

[1] As discussed below, the original Ordinance requiring a CO before a residence could be resold and occupied was Ordinance 2013-17 introduced on May 20, 2013 and adopted on June 17, 2013. It appears that before that date, homeowners were free to buy and sell homes even if they could not be legally occupied under local standards. Ordinance 2013-25, adopted on August 19, 2013, amended portions of Ordinance 2013-17 effective as of October 1, 2013. Ordinance 2013-28, adopted on November 4, 2013, which further amended the original Ordinance 2013-17, became effective on February 1, 2014.

[2] Defendants have also moved for judgment in their favor on Plaintiff's claims under the "takings clause" and for "selective enforcement." Plaintiff has conceded the entry of judgment in Defendants' favor on those claims.

In response, Plaintiff argues that: (1) he has standing
to assert his due process claims as he held a power of
attorney from his incapacitated mother;[3] (2) the Ordinance was
not in effect as shown by the Borough's website, which
provides that after the request of the mayor to hold off on
its implementation, the Ordinance became effective as of April
1, 2014; (3) if the Ordinance was in effect on the date of the
proposed sale, Kilmer never informed him that he could have
obtained a temporary certificate of occupancy, which would
have saved the sale with the original buyer;[4] and (4) if the
Ordinance was in effect on the date of the proposed sale,
Kilmer failed to accurately describe the Ordinance which as of
at least October 1, 2013 merely required a CO before re-
occupancy not as a pre-condition to a sale.

In conjunction with his opposition to Defendants' motion,
Plaintiff has filed a motion to file an amended complaint.
Plaintiff seeks to add as a new defendant the Borough's
administrator, John Gural, who was the author of the Borough's

_____

[3] Plaintiff's mother is now deceased.

[4] As discussed below, the allegation that Kilmer never informed
Plaintiff of the option of a temporary CO is not included in
his current complaint, nor is the assertion that Kilmer misled
Plaintiff when she stated that a CO was required prior to the
sale of his home even though the version of the Ordinance in
effect permitted the sale of a home without a CO so long as
the new buyer obtained a CO before re-occupancy.  In light of
Plaintiff's motion to amend, the Court addresses these
arguments nonetheless.

website.  Plaintiff also seeks to add the mayor back into the case.[5]  Plaintiff further seeks to assert claims against the Borough under <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978).

Defendants have opposed Plaintiff's motion, arguing that not only are Plaintiff's proposed amendments futile, they are inequitable because Plaintiff has been aware of Gural since the inception of the case, or at least by the end of discovery, which concluded on June 30, 2016, and Plaintiff's third attempt to assert claims against Scheffler are as unavailing as the first two.

## DISCUSSION

### A.    Subject matter jurisdiction

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983,[6] as well as the New Jersey constitution and New Jersey

---

[5] In his original complaint, Plaintiff asserted claims against the Borough's mayor, Karen Scheffler, for free speech violations and defamation/false light.  The Court granted Scheffler's motion to dismiss (Docket No. 23), denied Plaintiff's motion for reconsideration (Docket No. 37), and denied Plaintiff's motion to amend his complaint in an attempt to revive his claims against Scheffler (Docket No. 65).  In his proposed amended complaint, Plaintiff claims that Gural, Scheffler, and Kilmer are policymakers for the Borough, and once again claims that Scheffler violated his First Amendment rights.

[6] 42 U.S.C. § 1983, which provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory,

state law.  This Court has jurisdiction over Plaintiff's

federal claims under 28 U.S.C. § 1331, and supplemental

jurisdiction over Plaintiff's state law claims under 28 U.S.C.

§ 1367.

>    **B.    Standard for Motion for Summary Judgment**

Summary judgment is appropriate where the Court is

satisfied that the materials in the record, including

depositions, documents, electronically stored information,

affidavits or declarations, stipulations, admissions, or

interrogatory answers, demonstrate that there is no genuine

issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such

that a reasonable jury could return a verdict in the nonmoving

---

subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress.

"By its terms, of course, the statute creates no substantive
rights; it merely provides remedies for deprivations of rights
established elsewhere."  City of Oklahoma City v. Tuttle, 471
U.S. 808, 816 (1985).  Thus, "[t]o establish a claim under 42
U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a
right secured by the Constitution and the laws of the United
States [and] that the alleged deprivation was committed by a
person acting under color of state law."  Moore v. Tartler,
986 F.2d 682, 685 (3d Cir. 1993).

party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  <u>Id.</u>  In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence "is to be believed

and all justifiable inferences are to be drawn in his favor."

<u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir.

2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of

demonstrating the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the

moving party has met this burden, the nonmoving party must

identify, by affidavits or otherwise, specific facts showing

that there is a genuine issue for trial.  <u>Id.</u>  Thus, to

withstand a properly supported motion for summary judgment,

the nonmoving party must identify specific facts and

affirmative evidence that contradict those offered by the

moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing

summary judgment must do more than just rest upon mere

allegations, general denials, or vague statements.  <u>Saldana v.</u>

<u>Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

8

### C.    Analysis

#### 1.    Defendants' motion for summary judgment

Plaintiff claims that Defendants' enforcement of the CO Ordinance deprived him of a property interest when he lost the original buyer of his mother's house and was forced to foot the cost of repairs, upkeep, and property taxes until he found a new buyer.  Plaintiff argues he would not have been deprived of that property interest if Defendants had not improperly enforced the Ordinance, which was not in effect at the time, as reflected by the Borough's webpage.

Plaintiff, by way of his proposed amended complaint, also argues as an apparent alternative theory of liability, that Kilmer's failure to apprise him of the option of a temporary CO, expressly permitted in the challenged ordinance, deprived him of a property interest.  Lastly, Plaintiff argues that Kilmer informed him that a CO was required prior to the sale of his home even though the version of the Ordinance the Borough asserts was in effect at the time he contacted her permitted the sale of a home without a CO so long as the new buyer did not occupy the structure before a CO was obtained.

Defendants counter that the April 1, 2014 effective date on the website was a typographical error.  Defendants further argue that regardless of what the webpage said, the actual effective date of Ordinance 2013-28, which was an amendment to

the original Ordinance 2013-17, was February 1, 2014, and its effective date had never been placed on hold, despite the mayor's purported wish that it should be.  Defendants also point out that regardless of the effective date of Ordinance 2013-28, the requirement for a CO had been in existence since the original Ordinance 2013-17, which became effective June 17, 2013.  With regard to the temporary CO, to the extent that such a claim is actually in the case, Defendants argue that Plaintiff never inquired about a temporary CO, and Kilmer did not have any obligation to inform him about a temporary CO. Defendants also argue that Plaintiff has not provided any proof that an issuance of a temporary CO would have saved the sale to the original buyer.

Before turning to the merits, the Court must first address Defendants' argument that Plaintiff lacks standing.

### a. Whether Plaintiff has standing

To establish standing, a plaintiff must show: "(1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." National Collegiate Athletic Ass'n v. Governor of New Jersey, 730 F.3d 208, 218–19 (3d Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S.

488, 493 (2009)).  The contours of the injury-in-fact

requirement, although "not precisely defined, are very

generous."  Id. (citation omitted).  "Indeed, all that Article

III requires is an identifiable trifle of injury, which may

exist if the plaintiff has a personal stake in the outcome of

[the] litigation."  Id. (citing Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 n.1 (1992) (noting that to satisfy

the injury-in-fact requirement the "injury must affect the

plaintiff in a personal and individual way")) (other citation

omitted).

    The injury sufficient to confer standing is particularly

relaxed where the allegation asserts a violation of a

constitutional right.  As the Supreme Court recently noted,

there is a well-established historical distinction between

efforts to vindicate a public right, for example a violation

of a regulatory statute, and a private right such as a

constitutional tort.  See Spokeo, Inc. v. Robins, 136 S. Ct.

1540, 1551 (2016).  The latter requires a heightened showing

of standing in order to avoid entangling the courts in policy

disputes or to enlist the courts in the enforcement of

statutes where a private right of action is unclear and the

harm hypothetical.  Such disputes are not cases or

controversies with the meaning of Article III and are best

left to the discretion of the relevant executive branch

agencies that administer and enforce regulatory statutes.

In contrast, a plaintiff alleging a violation of a private right need only meet a lessened measure of standing. This is because violations of certain private rights are actionable even in the absence of actual damages, where the harm is intangible such as defamation, or where damages are difficult to calculate. See Spokeo, 136 S. Ct. at 1551 ("In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. . . . Many traditional remedies for private-rights causes of action . . . are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right."). As Justice Thomas noted in his concurrence in Spokeo, one of the clearest examples of this is an allegation of a violation of a constitutional right where a demonstrated violation warrants an award of nominal damages even in the absence of actual damages. Spokeo, 136 S. Ct. at 1552 (Thomas, J., concurring). The absence of economic harm should not shield a government official who violates his oath and breaches the duty he owes to a citizen to act according to the Constitution.

Plaintiff in this case has asserted a violation of a private right and the economic injury he alleges stemming from enforcement of the challenged Ordinances is sufficient to

confer standing to pursue substantive due process claims against Defendants. The Ordinances provide that they apply to an "Owner" of a residential property. The original Ordinance 2013-17 requires a written application for a certificate of occupancy "by owner or his/her agent" prior to any sale of a residence. (Docket No. 47-2 at 6.) The definition of "Owner" is: "The person who owns, purports to own or exercises control over any residential property." (Id.) Defendants do not dispute that Plaintiff exercised control over his incapacitated mother's home, and that he has claimed an injury relating to that status. Thus, by the very definition of "owner" in the Ordinances at issue, Plaintiff has a personal stake in his mother's house and an interest in not having his substantive due process rights violated.[7]

Defendants argue that also fatal to Plaintiff's standing is his inability to establish any injury. Plaintiff alleges that he suffered monetary damages for the cost of repairs, maintenance, and property taxes he would not have incurred but for Defendants' constitutionally impermissible application of the CO Ordinances which caused the sale to fall through with the original buyer. Plaintiff further alleges damages for

---

[7] The Court notes that the Plaintiff brings his claims both in his own name and as the personal representative of his mother who was incompetent at the time this action was instituted.

blood pressure elevation, weariness, loss of sleep, anxiety, depression, emotional distress, mental anguish, and diminution in the quality of time spent with his mother due to trying to pretend all was well with her home.  Defendants counter that Plaintiff's professed damages are unsupported, and even accepting Plaintiff's calculation of his expenditures, at most Plaintiff suffered is a de minimus loss of $815 when subtracting his expenditures with the $20,000 increased sale price over the original buyer's offer.

As Justice Thomas observed in Spokeo, the viability of action to vindicate a private right, such as Plaintiff's claims here, are not contingent upon the establishment of damages beyond the alleged violation itself.  Defendants' arguments about Plaintiff's lack of damages miss the mark with regard to the standing issue.[8]  Thus, it is clear that Plaintiff has standing, both in his personal and representative capacity, to bring his constitutional claims against Defendants.

### b.  Plaintiff's due process claims

The next issue to be addressed is one of law.  Before turning to the substance of Plaintiff's due process claims,

---

[8] Ultimately, however, the extent of Plaintiff's damages is a moot issue since Plaintiff's constitutional claims are unavailing.

the Court must first determine what law was in effect at the time Plaintiff contacted Kilmer, and then determine whether Plaintiff has presented sufficient issues of material fact to withstand Defendants' summary judgment motion.

### i. What law was in effect on when Plaintiff contacted Kilmer on February 27, 2014

Prior to June 17, 2013, the Borough of Palmyra did not require a homeowner to obtain an inspection and a certificate of occupancy from the Borough when an owner wished to sell his or her home. The original Ordinance requiring a CO before a residence could be resold and occupied was Ordinance 2013-17 introduced on May 20, 2013 and adopted on June 17, 2013. This Ordinance required that a residence could not be sold until a CO was first obtained from the Housing Department. (Docket No. 47-2 at 6.) The Ordinance also provided that the Housing Department "may issue a temporary certificate of occupancy in appropriate cases and may, in such instances, grant up to 90 days to correct violations . . . ." (Id. at 7.)

That Ordinance was amended by Ordinance 2013-25, with an effective date of October 1, 2013.[9] Relevant to the case here, section 3C of Ordinance 2013-17 was amended to provide:

---

[9] Ordinance 2013-25 was introduced on August 5, 2013, and opened for public comment on August 19, 2013. (Docket No. 47-4.)

"Although a residence may be sold without the issuance of a certificate of occupancy or a temporary certification of occupancy, the residence may not be occupied for residential purposes prior to the issuance of the certificate of occupancy or a temporary certificate of occupancy." (Docket No. 47-4 at 5-6.)

Ordinance 2013-28 further amended the original Ordinance 2013-17, and incorporated the amendments of Ordinance 2013-25. This Ordinance, adopted on November 4, 2013, became effective as of February 1, 2014. (Docket No. 47-5 at 5 and 6.) The only change in Ordinance 2013-28 relevant to this case relates to temporary COs. Ordinance 2013-28 deleted the first sentence of section 4 in Ordinance 2013-17 and replaced it with two new sentences which provide that the Housing Department "may issue" a temporary CO "in appropriate cases provided that the owner presents a corrective plan to rectify the violations within a reasonable period," and the temporary CO "may be issued for 90 days, and may be extended up to 90 days if progress is shown . . . ." (Docket No. 47-5 at 5.)

Plaintiff argues that none of these Ordinances were in effect when he contacted Kilmer on February 27, 2014 because they were "on hold" at the request of the mayor. He bases his argument on the Borough's website, which provided: "Attention Homeowners: thinking of selling your home? Effective April 1,

2014, Certificate of Occupancy inspections (on existing home re-sales) are now required."[10]  (Docket No. 55-11 at 2-4.)  The website then related the history of Ordinance 2013-17, but stated:

> On Thursday, September 12th however, Mayor Karen Scheffler met with noted local REALTOR® and then-PHCA Board member Joan Byrem, along with several other local Real Estate agents and other professionals.  As a result of this meeting Mayor Scheffler requested that CO inspections be postponed until recommendations proposed by Ms. Byrem can be adopted.  This ordinance was on hold but is now being enforced, effective April 1, 2014.

> (Id. at 3.)

Defendants argue that the April 1, 2014 date was a typographical error, and February 1, 2014 was the correct date.  Defendants further argue that even though the mayor requested the CO inspections be delayed, any adoption or amendment of an Ordinance would have required a public hearing, a vote by the Borough's governing body, and publication in the newspaper.  The mayor is not a part of the adoption or amendment process, and the mayor's request to delay the enforcement of the CO Ordinances was never subject to that procedure, and they were therefore never put "on hold."

---

[10] It is not clear from the record when the information on the webpage was posted, but the statement "Effective April 1, 2014," CO inspections "are now required" suggests it was posted after April 1, 2014.

The Court finds as a matter of law that Ordinance 2013-17 and its amendments were in effect as of February 27, 2014, the date Plaintiff contacted Kilmer regarding his proposed sale. It is undisputed that the original Ordinance 2013-17 was in effect on June 17, 2013, and amended twice with effective dates of October 1, 2013 (Ordinance 2013-25) and February 1, 2014 (Ordinance 2013-28). Plaintiff has also failed to show how a webpage post, presumptively posted after April 1, 2014, would serve to override the formal process of the Borough's governing body in enacting ordinances, including publishing the proposed ordinances in the newspaper and seeking public comment prior to the ordinances taking effect.[11] Plaintiff admits that no formalities regarding the mayor's suspension-of-inspections request were undertaken by the Borough. (Pl's Responsive Statement of Undisputed Material Facts, Docket No. 55-1 at 6, ¶ 38.)

The best evidence that the Ordinance and its amendment were in place is that the parties in this case and the Borough

---

[11] Plaintiff discovered the website posting in February or March 2015 - well after his February 27, 2014 email to Kilmer, the repairs, and issuance of the CO in September 16, 2014. This case is not one where Plaintiff relied upon the website for the Ordinance's effective date and failed to obtain a CO prior to the sale of his mother's house, and was then held liable for a violation of the Ordinance. That fact pattern would present a very different case with regard to the webpage's role in any due process violation.

in general acted in conformity with them. Plaintiff has not
presented any evidence that at some time between the June 17,
2013 effective date of Ordinance 2013-17 and the website
posting (a period that encompasses the time Plaintiff sought
to sell his mother's home), the Borough stopped conducting CO
inspections according to the Ordinance at the request of the
mayor and local realtors.

Indeed, the undisputed facts are to the contrary.
Plaintiff's own experience shows that the Ordinances were in
effect and enforced during the relevant time period. On
February 27, 2014, Plaintiff contacted the Borough to
determine whether an inspection and the issuance of a CO were
required in order to sell his mother's house, and he was told
it was.[12] Plaintiff has provided no evidence that he was the
only owner of a residential property to whom the Borough
applied the CO requirement after the date it was purportedly
placed "on hold." To the contrary, Plaintiff has not refuted
Defendants' evidence that lists the other 18 inspections
performed during this period. (See Docket No. 47-19 at 2-3.)
Thus, the unrefuted evidence shows, as a matter of law, that
the original CO Ordinance and its amendments were in effect

---

[12] The Court addresses below the issue of Kilmer informing
Plaintiff that he required a CO to sell his house, when the
Ordinance in effect at the time only required a CO when the
new buyer re-occupied the home, not when the house was sold.

when Plaintiff contacted Kilmer on February 27, 2014.[13]

### ii. Plaintiff's due process claims

Having determined the local law in effect during the relevant time period, the Court now turns to the merits of Plaintiff's due process claim. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Due Process Clause contains both a procedural and substantive component, American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012), and Plaintiff in this case has asserted claims for violations of his substantive due process right. To prove a substantive due process claim, a plaintiff must show: (1) he was deprived of a protected property interest; and (2) a state actor acted with a degree of culpability that shocks the conscience. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008); Maple Prop., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 179 (3d Cir. 2005)

---

[13] Plaintiff contends that it is in dispute whether Ordinance 2013-28 left undisturbed the core provisions of Ordinance 2013-17, such that inspections and the issuance of a CO were required prior to the re-occupancy of any resold property (as opposed to prior to any sale). (See Plaintiff's response to Defendants' Statement of Undisputed Facts, at 2-3.) Plaintiff does not further elaborate on this contention or how it affects his claims. There is no legal or factual support for this contention and the Court rejects it as meritless.

(finding conscience-shocking behavior where the misconduct involves corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties); see also Loscombe v. City of Scranton, 600 F. App'x 847, 852 (3d Cir. 2015) ("As to the substantive due process claim, we note that different standards govern depending on whether an individual challenges a legislative act or a non-legislative state action." Compare Am. Express Travel Related Services, Inc. v. Sidamon–Eristoff, 669 F.3d 359, 366 (3d Cir. 2012) ("In a case challenging a legislative act . . . the act must withstand rational basis review."), with Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 660–62 (3d Cir. 2011) (applying a "shock the contemporary conscience" test because the challenged conduct was non-legislative action)).

Having rejected Plaintiff's contention that his substantive due process rights were violated because Ordinance 2013-17 as amended was "on hold" until April 1, 2014, we turn to his other two arguments.[14]

---

[14] Even if the CO Ordinances were "on hold" when Plaintiff attempted to sell his mother's home to the original buyer, his claim would still fail because the Borough's enforcement of the Ordinances cannot be deemed "egregious" or "conscience-shocking."  Kilmer testified she was acting in good faith compliance with local law having never been informed of any suspension of the CO Ordinances.  Not only does Plaintiff not refute this testimony he adopts it as part of his motion to add claims against Gural for an alleged failure to inform Kilmer of the hold on the CO Ordinances.  (Docket No. 54-1 at

First, the Court construes Plaintiff's submissions to argue that Kilmer's failure to inform him that he could not sell the house without a CO, and that a CO was only required before the buyer reoccupied the home, violated his substantive due process rights. Second, Plaintiff contends by way of his proposed first amended complaint that, even assuming the Ordinances were in effect when he contacted Kilmer, she failed to notify him of the Ordinances' option of obtaining a temporary CO, which would have saved the sale and eliminated

_____

3, ¶ 29.) Moreover, Kilmer's inspection of Plaintiff's home, and the inspection of 18 other homes during this time period, even if they occurred during a temporary suspension of enforcement of the CO Ordinances, served an important public policy. As the governing body of the Borough of Palmyra explained it "intend[ed] by the adoption of this Ordinance to ensure that all residents live in decent housing that meets the standards set forth by applicable codes, regulations and statutes." (Docket No. 47-2 at 5.) Kilmer's efforts to promoted decent housing to all of its residents, even if she did so unwittingly while the Ordinances were "on hold," cannot be found to shock the conscience, particularly when there are no allegations that Kilmer was acting in her self-interest or engaged in corruption. See, e.g., Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004) (where property owners asserted that "zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled" them, the court finding that such alleged conduct did not pass the "shocks the conscience test," especially where there was no allegation of corruption or self-dealing, the local officials were "not accused of seeking to hamper development in order to interfere with otherwise constitutionally protected activity at the project site," or there was some bias against an ethnic group).

his expenditures for repair, maintenance, and property taxes. The Court concludes that Plaintiff has failed to raise disputed issues of material fact on either theory sufficient to defeat summary judgment, even when viewing the evidence in the light most favorable to Plaintiff.

To the extent that Plaintiff concedes that the CO Ordinances were in effect but those Ordinances did not require him to obtain a CO prior to sale, only prior to the re-occupation of the residence, we assume a factfinder would agree that Kilmer failed to inform him of this option, which was provided in the first amendment to the original Ordinance effective October 1, 2013.[15] Plaintiff has provided no proof, however, other than Plaintiff's own statements, that the original buyer would have proceeded with the sale without a CO at the time of closing. To the contrary, Plaintiff claims that the buyer wanted a quick sale and to move into his mother's house "as is." Even though Ordinance 2013-25 permitted Plaintiff to sell his home without a CO, no new

---

[15] Plaintiff emailed Kilmer, stating, "I have a potential buyer [for his mother's house] who is very interested in a quick purchase. We believe we need to get an inspection done for a CO?" Kilmer responded to Plaintiff, "We now require a housing inspection for resale." (Docket No. 55-9.) Based on this email the Court accepts as true that Kilmer did not inform Plaintiff that he could have sold his home without a CO with the new owner responsible for obtaining a CO prior to moving in, as set out in the Ordinance effective as of October 1, 2013.

buyer could have moved into the home until the CO was issued. Plaintiff has not provided any proof that the original buyer would have accepted those terms and would have agreed to be responsible for the repairs of the 33 code violations after the sale and prior to moving in.

In fact, Plaintiff fails to relate much detail about the proposed sale to the original buyer at all, including the reason why the transaction was not consummated, and only states that the buyer "just said he's not interested in the house anymore, or he's not going to buy it anymore." (Docket No. 47-10 at 9, Pl. Dep. 49:12-13.) Thus, even Plaintiff's own testimony does not support the premise that the buyer would have been willing to go through with the sale but delay occupancy until he repaired the code violations and passed a subsequent inspection.[16]

A similar fate dooms any claim regarding Kilmer's failure to tell Plaintiff about the option of a temporary CO. Plaintiff has not provided any evidence (1) that Kilmer had an independent duty to inform Plaintiff about a temporary CO when he did not ask about one, and (2) that a temporary CO would

---

[16] When asked if the original buyer would have bought the home when the repairs were done, he responded, "I guess if I had the repairs done, if I got that CO soon, he would have. But it was already a month went by almost." (Docket No. 47-10 at 9, Pl. Dep. 49:16-20.)

have saved the sale of the home.  The language of the
Ordinances provides that temporary COs are discretionary and
"may issue in certain cases."  The temporary CO would give the
owner 60 or 90 days (depending on the Ordinance in effect at
the relevant time) to correct violations, along with
additional extensions.  Even though she was inspecting
Plaintiff's mother's home for a non-temporary CO, Kilmer
provided Plaintiff with as much time as he needed to make the
repairs, which resulted in a four-month extension from the
original April 30, 2014 deadline.

It is simply unclear how a temporary CO would have
changed anything.  As with the previous argument, Plaintiff
has not provided any evidence to show that the original buyer
would have followed through with the sale, moved in on a
temporary CO, assumed responsibility for 33 code violations
and submitted to re-inspection.  Thus, Plaintiff's contention
that Kilmer's failure to inform him of the option of a
temporary CO does not rise to the level required to prove a
substantive due process violation.

Based on the foregoing, Plaintiff's claims that
Defendants violated his substantive due process rights by the
enforcement of the CO Ordinances and by not offering him the
option of post-sale, pre-occupancy CO or a temporary CO are
not supported by the evidence, even when viewed in the light

most favorable to Plaintiff. Consequently, Defendants are
entitled to summary judgment in their favor.

### 2. Plaintiff's motion to file an amended complaint

In addition to the claims against Defendants regarding
the temporary CO, Plaintiff seeks to file an amended complaint
to add John Gural to the case, re-add Mayor Karen Scheffler to
the case, deem Kilmer, Gural, and Scheffler as policymakers
for the Borough, and assert a Monell claim against the
Borough.[17] Plaintiff's request, filed on November 6, 2017,
comes over a year after the scheduling order permitted
amendments or the addition of new parties. (Docket No. 18.)
His motion also comes almost seven months after the close of
discovery, which was June 30, 2017. (Docket No. 39.)
Plaintiff's request to add Scheffler back into the case is his
second attempt.[18]

Despite Plaintiff's belated proposed amendment, the
federal rules direct that a court "should freely give leave"
to a plaintiff to file an amended complaint, "when justice so
requires." Fed. R. Civ. P. 15(a)(2); see also Grayson v.

---

[17] Plaintiff does not specifically cite to Monell in his
proposed amended complaint, and Plaintiff did not submit a
brief in support of his motion to file an amended complaint.
The Court presumes that Plaintiff premises his municipal
liability claim under Monell based on the arguments in his
briefs submitted in opposition to the summary judgment
motions.

[18] See, supra, note 5.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing
Foman v. Davis, 371 U.S. 178, 182 (1962)) (providing that an
amendment must be permitted in the absence of undue delay, bad
faith, dilatory motive, unfair prejudice, or futility of
amendment). Thus, the Court will address Plaintiff's motion.
The Courts finds, however, that because such amendments would
be futile, Plaintiff's motion to file an amended complaint
must be denied.

Plaintiff's proposed amended complaint modifies his
original complaint in two ways: (1) Plaintiff claims that
Gural, Kilmer, and Scheffler are official policymakers for the
Borough, and the Borough is liable for the violation of his
constitutional rights; (2) Plaintiff seeks to add "false
light" First Amendment claims against Scheffler.

For his claims against Gural, Kilmer, and Scheffler as
policymakers, Plaintiff claims that Gural implemented as
Borough policy Scheffler's request to put a hold on the CO
Ordinances, Gural failed to notify Kilmer about the hold,
Kilmer misinformed Plaintiff about the need for a CO prior to
sale as opposed to re-occupation, and Kilmer had a policy of
not informing residents about the option of a temporary CO.
Through these actions as policymakers, Plaintiff claims that
the Borough is liable for its unconstitutional policies which
violated Plaintiff's substantive due process rights. (See

generally Docket No. 54-1 at 1-14.)

Under <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Liability may be imposed against a municipality under <u>Monell</u> "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees."  <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted).  A policymaker is a person who is "responsible for establishing final government policy respecting" the activity in question and "whether an official had final policymaking authority is a question of state law."  <u>Id.</u>

Even accepting Plaintiff's conclusory allegations that Gural, Kilmer, and Scheffler are policymakers for the Borough, an allegation that Defendants firmly dispute, the other allegations to support Plaintiff's claims against these Defendants and the Borough have been found to be without merit

and unsupported by the evidence, as discussed in detail above. It would therefore be futile to add claims against these parties which have already been adjudged in their favor.

With regard to Scheffler, the Court previously dismissed Plaintiff's First Amendment violation claims against her (Docket No. 23), denied Plaintiff's motion for reconsideration on that issue (Docket No. 37), and then again denied Plaintiff's first motion to file an amended complaint (Docket No. 65), which attempted to replead his First Amendment claims. The Court does not see any meaningful changes in his claims against Scheffler from Plaintiff's first complaint to Plaintiff's most recent proposed amended complaint. Because the Court has already dismissed these same claims against Scheffler, it would be futile to permit Plaintiff to reassert them again.

Consequently, Plaintiff's motion for leave to file an amended complaint must be denied.

## CONCLUSION

The Court does not question the sincerity of Plaintiff's assertion that he "went through all this hell" related to the sale of his mother's home. Selling a family home, especially when the reason for the sale is an ailing incompetent parent, is no doubt a stressful and emotional endeavor. And there seems little doubt that the defendant Borough could have done

a much better job conveying to the public the meaning of and enforcing its ordinances.  But not every government misstep is a constitutional tort.

The record is clear that even if the Borough had told Plaintiff about the possibility of a temporary CO or that a sale could be consummated prior to re-occupancy, Plaintiff has offered no evidence the proposed buyer would have acted any differently than he did.  Someone, whether it was Plaintiff or a new buyer, would have had to undertake the hassle, expense, and overall burden of bringing the property up to the standard of the local code prior to occupancy.

In sum, the evidence, even when viewed in the light most favorable to Plaintiff, does not support his claim that Defendants violated his substantive due process rights when they sought to enforce the core provisions of the relevant CO Ordinance.  That same lack of evidence renders his proposed amended complaint futile.

Defendants' motion for summary judgment will therefore be granted, and Plaintiff's motion for leave to file an amended complaint will be denied.  An appropriate Order will be entered.


Date:   April 27, 2018              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.